EDWARD McDONALD, Respondent, v. DANIEL A. LANZETTA, Doing Business as D. A. LANZETTA MARBLE Co., Appellant.

Hill, P. J., Crapser, Bliss and Heffernan, JJ., concur; Foster, J., dissents, in an opinion.

FOSTER, J. (dissenting). Defendant appeals from a judgment of $7,878.70 in favor of the plaintiff, entered upon the verdict of a jury in the Albany county clerk's office on the 28th day of June, 1940; and also from the order denying defendant's motion to set aside the verdict and for a new trial.

Plaintiff sued to recover damages for personal injuries alleged to have been sustained as a result of negligence on the part of one of defendant's employees, while the latter is said to have been acting within the scope of his employment. Plaintiff was a rigger by trade, and at the time of the accident was engaged, with other men, in placing a large boiler in the cellar of a building, known as the Waldorf Building, at the southeast corner of State and South Pearl streets in the city of Albany. The boiler was lowered through a cellar entrance on the sidewalk of State street. Apparently from the photograph in evidence the south side of this entrance was flush with the north wall of the building. When not in use the entrance was covered by two iron doors which open upwards from the center. Plaintiff estimated that each of these doors weighed about 200 pounds.

When plaintiff arrived on the scene two of defendant's employees were on a scaffold, which hung on the north wall of the building, and were engaged in cleaning this wall. After some delay their scaffold was lowered to the sidewalk so that plaintiff and his fellow employees could attach a block and fall to the roof of the

building to assist them in lowering the boiler through the cellar entrance. After the doors of the cellar entrance were opened plaintiff placed a stick between them to keep them from falling down while the boiler was being lowered.

According to the testimony of the plaintiff, who was in charge of the boiler delivery, two lashings were attached to the boiler, one on the top and one on the bottom. After the block and fall had been affixed to the roof a hook thereupon was placed into the lashing on the top of the boiler and the boiler was picked up straight and lowered to the bottom of the entrance. Then the hook was released from the top lashing and hooked onto the bottom one. One of the plaintiff's fellow employees then pulled on the rope, which was a part of the block and fall, to raise the bottom of the boiler while plaintiff shoved the boiler from the top. It was plaintiff's intention to tip the top of the boiler over onto the floor of the cellar. In order to do this he placed his legs around the boiler and pushed the top forward and while doing so his own body was in the cellar entrance so that only twelve or eighteen inches protruded above the level of the sidewalk. It is his claim that while he was in this position one of the defendant's employees, a man whose name was Thomas Bridge and who was in charge of defendant's work on the premises, removed the stick which held the doors apart; and that one of the doors fell, striking the plaintiff on the head.

Bridge admits that he removed the stick but claims that he did so at the request of the plaintiff, so that the latter could reach a rope which was between the stick and the wall of the building. He also claims that he replaced the stick immediately thereafter in the same position that it had been. Plaintiff denies this. As to this dispute probably a fair question of fact was presented. The jury may have found from the physical characteristics as described in the testimony, and the photograph in evidence, that the testimony of defendant's employee as to the rope being between the stick and the wall was inherently improbable. It was evidently the theory of the trial court that if the jury rejected the explanation of defendant's employee it was then justified in finding that this employee removed the stick for some purpose connected with defendant's work on the premises. The testimony, however, falls far short of establishing a satisfactory basis for such a conclusion. It does not appear that defendant's employees had anything whatever to do with the installation of the boiler. The only possible interest that either of them could have had in removing the stick was to close the door so that they might raise their own scaffold again and continue their work. The situation as described, however, precludes this as a legitimate inference. According to the testimony of the plaintiff himself the block and fall was not only still attached to the roof but was also hooked onto the boiler. Under these circumstances it is quite evident that defendant's employees could not have raised their scaffold and continued their work even if the doors to the cellar entrance had been closed. It seems a ridiculous conclusion that Bridge would have removed the stick to close the doors, or for any other purpose connected with his work, while plaintiff's tackle was still attached to the boiler and the latter's body protruded some twelve or eighteen inches above the level of the sidewalk. If he did so, without any request on the part of the plaintiff, the evidence at least furnished nothing but speculation as to his purpose.

The judgment here was a substantial one, against a defendant who was not personally on the premises. It is based upon the theory of *respondeat superior*

and upon testimony which viewed even in a light most favorable to the plaintiff is decidedly cloudy and speculative. In my opinion it fails to sustain the ver-'ct and I think the same should be set aside and a new trial granted.